# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CYNTHIA L. McCLELLAND, | ) | Case No. 06-41720-13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CYNTHIA L. McCLELLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NORTH AMERICAN SPECIALTY | ) | Adv. No. 09-4121 |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FORTRESS FINANCIAL, LLC, et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Cynthia McClelland initiated this adversary proceeding to recover on certain surety bonds North American Specialty Insurance Company ("NASIC") issued to Fortress Financial, LLC, a mortgage broker that the Court previously found – in Adversary No. 07-4065 – to have caused McClelland $156,262 in compensatory and punitive damages. NASIC's third-party complaint seeks contribution and noncontractual indemnity from numerous third-party defendants for any damages McClelland recovers from NASIC. Third-party Defendant John M. Howard, d/b/a Howard Appraisal Group ("Howard"), now seeks summary judgment on the sole count of the third-party complaint seeking relief against Howard (Count III). He asserts that under Mo. Rev. Stat. § 537.060 an earlier settlement with McClelland bars any claims for contribution, indemnification, or subrogation that NASIC might have against him. For the reasons stated below, the Court will grant summary judgment in favor of Howard on Count III of NASIC's third-party complaint on that very basis.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[1] In a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of genuine issues of material fact.[2] Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings; self-serving allegations or mere assertions of disputed fact are insufficient to defeat the motion.[3]

## UNCONTESTED MATERIAL FACTS

1.     Cynthia McClelland filed for Chapter 13 bankruptcy protection on July 11, 2006.

2.     On March 25, 2007, McClelland initiated an adversary proceeding (No. 07-4065) against Howard, Fortress Financial, LLC ("Fortress"), and others, alleging, *inter alia*, that the defendants defrauded, negligently misrepresented facts, and breached fiduciary duties they owed to her in connection with McClelland's purchase of a home located at 6718 Paseo in Kansas City, Missouri. Howard provided the appraisal for the purchase of the home and Fortress brokered the mortgage.

3.     McClelland settled her claims against all of the defendants in the adversary proceeding except Fortress. Germanely, on March 20, 2008, McClelland executed a settlement agreement with Howard releasing all her claims against him in exchange for $12,000. The Court approved the settlement on May 22, 2008, and on June 4, 2008, McClelland and Howard filed a stipulation of dismissal, dismissing with prejudice McClelland's claims against Howard.

4.     The Court held a hearing on McClelland's claims against Fortress on June 3, 2008. Fortress did not appear at the hearing or otherwise defend itself against McClelland's claims, although Fortress had filed an answer to McClelland's complaint and had participated in pre-trial discovery.

5.     On June 20, 2008, the Court issued a memorandum opinion finding that Fortress violated its

---

[1] Fed. R. Bankr. P. 7056.

[2] *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983).

[3] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005).

fiduciary duty to McClelland, committed fraud, and violated the Missouri Merchandising Practices Act. The Court awarded McClelland $56,262 in actual damages and $100,000 in punitive damages.

6. Approximately one year later, on June 22, 2009, McClelland filed the above-captioned adversary proceeding against NASIC seeking to collect against certain surety bonds NASIC had issued to Fortress. By their terms, the bonds cover only Fortress's conduct.

7. On October 5, 2009, NASIC filed a third-party complaint against Howard and others seeking contribution or noncontractual indemnity for any amount NASIC may ultimately be adjudged liable to McClelland. Specifically, with regard to Howard, Count III alleges in pertinent part:[4]

> 37. To the extent that . . . the Previous Defendants (including Howard) are joint tortfeasors with Fortress, they are jointly and severally liable with Fortress to McClelland for the damages she seeks to recover from NAS Surety.
>
> 38. While NAS Surety denies that it is liable to McClelland under any of the theories advanced by her in the Amended Complaint, if NAS Surety is found so liable, [Howard is] liable to NAS Surety in the amount of all or part of the claims asserted by McClelland against NAS Surety.

8. On March 30, 2010, McClelland filed a motion to approve a settlement with NASIC. The motion states that NASIC agreed to pay McClelland $20,000 and McClelland agreed to release her claims against NASIC and to dismiss with prejudice her lawsuit against NASIC. The Court granted McClelland's motion and approved the settlement on April 1, 2010.

9. Howard answered NASIC's third-party complaint on April 22, 2010, and filed this motion for summary judgment on May 6, 2010.

## DISCUSSION

Before reaching the central issue of whether Mo. Rev. Stat. § 537.060 bars NASIC's claims against Howard, the Court disposes of two of NASIC's collateral arguments. First is NASIC's contention that the Court should deny Howard's motion for summary judgment because it was filed after the March 31, 2010 deadline for dispositive motions set forth in the scheduling order entered on October 5, 2009. This contention borders on the specious and is not well taken. NASIC had not

---

[4] NASIC refers to itself as "NAS Surety" in the third-party complaint.

filed its third-party complaint against Howard, let alone served process on him, when the Court entered the scheduling order. Consequently, the order is not binding on Howard.[5] Even if it was, the Court would, *sua sponte* and *nunc pro tunc*, grant Howard leave to file the instant motion inasmuch as NASIC has not alleged, nor has the Court found, that NASIC has been prejudiced by the filing of this motion.

Second, the court disposes of NASIC's misguided suggestion that its purported claims against Howard arise from a right of subrogation to McClelland's claims against Howard. Upon payment on a surety bond, such as the ones at issue here, a surety steps into the shoes of the *principal* with regard to claims against third parties whose conduct compelled the surety to make payment.[6] The principal in this case is Fortress, not McClelland. The fact that McClelland was the ultimate beneficiary of the bond does not make her the principal. And standing in her shoes wouldn't do NASIC any good – she has already settled her claims against Howard. Standing in the shoes of Fortress, NASIC's only potential claims against Howard would be, as NASIC stated in its third-party complaint, claims for contribution or noncontractual indemnity. Those claims, however, are barred by Mo. Rev. Stat. § 537.060 as a result of Howard's settlement with McClelland.

The application of § 537.060 to the undisputed facts in this case is straightforward, despite NASIC's attempts to obfuscate the issue.

Section 537.060 provides:

> Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. *When an agreement by release, covenant not to sue or not to enforce a judgmenct is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death,* such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide;

---

[5] *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over ... the parties.").

[6] *See Manufacturers Bank and Trust Co. of St. Louis v. Transamerica Ins. Co.*, 568 F.Supp. 790, 792 (E.D. Mo. 1983). NASIC's confusion (unintentional or contrived) appears to stem from the language in these cases referring to a surety stepping into the shoes of the "creditor." The creditors referenced, though, were not the injured parties, but rather the principals who were making claims (presumably for reimbursement) against the bonds.

however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. *The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor*. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.[7]

Howard settled with McClelland on March 20, 2008. That settlement, executed in good faith,[8] released Howard from any further liability to McClelland for acts committed in connection with the purchase of her home. Consequently, § 537.060 discharged Howard's liability for contribution or noncontractual indemnity to any other joint tortfeasor. Thus, Fortress, and by subrogation, NASIC, is barred from pursing such claims against Howard.

NASIC attempts to escape the effect of § 537.060 by arguing: (1) that § 537.060 applies only to tort claims, and Howard is (allegedly) jointly liable with Fortress based in part on a statutory violation of the Missouri Merchandising Practices Act; and (2) that under Missouri case law, a surety's subrogation rights cannot be extinguished by a settlement if a third-party tortfeasor knows of the surety's right of subrogation and settles with the insured without the surety's consent. According to NASIC, its right of subrogation arose prior to Howard's settlement with McClelland and Howard has failed to establish that he was unaware of NASIC's subrogation rights.

First, the Court finds that § 537.060 applies to claims for contribution under the Missouri Merchandising Practices Act.[9] The fact that a cause of action arises from a statute does not preclude the application of § 537.060 if the elements of the action are analogous to a common law tort action.[10] In other words, if an action sounds in tort, as opposed to contract,[11] § 537.060 applies. And

---

[7] Mo. Rev. Stat. § 537.060 (emphasis added).

[8] NASIC has not suggested otherwise, and McClelland's good faith can be implied from the Court's order approving the settlement.

[9] Ironically, if not hypocritically, NASIC seeks contribution or noncontractual indemnity from Howard as a joint tortfeasor yet denies that § 537.060 bars its claims because it applies only to torts.

[10] *See e.g., Curtis v. Loether*, 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (holding that an action for damages for discrimination under the Fair Housing Act of 1968 "sounds basically in tort – the statute merely defines a new legal duty and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. . . . [It is]analogous to a number of tort actions recognized at common law."). *See also*,

5

a violation of the Missouri Merchandising Practices Act, which is essentially a fraud statute, sounds in tort.[12]

Second, whether NASIC's subrogation rights arose before or after Howard settled with McClelland, and whether Howard knew of those subrogation rights, is irrelevant here.[13] Quite simply, the common law rule that a surety's subrogation rights cannot be extinguished by a settlement if a third-party tortfeasor knows of the surety's right of subrogation and settles with *the insured* without the surety's consent does not apply here because Howard didn't settle with the insured, *i.e.*, *Fortress*, he settled with a third party, McClelland.[14] The fact that McClelland had a

---

*State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 91 (Mo. 2003) (finding that the Missouri Human Rights Act sounds in common law tort for purposes of the 7th Amendment right to a jury trial).

[11] NASIC is correct that Missouri courts have declined to apply § 537.060 to contract claims. *See Ozark Air Lines Inc. v. Valley Oil Co., LLC*, 239 S.W.3d 140, 143-44 (Mo. Ct. App. 2007).

[12] *See, e.g., Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 777-78 (Mo. Ct. App. 2008) ( "[T]he MMPA supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance.").

[13] Nevertheless, the Court notes that NASIC is incorrect, an insurer's subrogation rights accrue upon payment of the insurance claim. *See State ex rel. Missouri Pacific Railroad Co. V. Haid*, 59 S.W.2d 690 (Mo. banc 1933); *Liberty Mutual Insurance Co. v. Mercantile Home Bank & Trust Co.*, 241 S.W.2d 493 (Mo. Ct. App. 1951) ("Insurer's rights to subrogation accrue on payment of the insurance claim; but until payment of the claim on the policy no rights to subrogation accrue."). The cases on which NASIC relies for the proposition that subrogation rights arise at the time of the execution of a bond or insurance policy are inapposite; they speak solely to the rights of intervening creditors in a surety's collateral. *See e.g.*, *First State Bank v. Reorganized School District R-3, Bunker*, 495 S.W.2d 471 (Mo. Ct. App. 1973). *See also* 83 C.J.S. Subrogation § 58.

[14] *See Travelers Indemnity Co. V. Chumbley*, 394 S.W.2d 418, 420 (Mo. Ct. App. 1965) ("[I]f a third party tort-feasor, with knowledge of an insurer's right of action as subrogee, and without the consent of the insurer, settles with the *insured*, the insurer's right to proceed against such tort-feasor is not affected.") (emphasis added). *See also Dickhans v. Missouri Property Insurance Placement Facility*, 705 S.W.2d 104, 106 (Mo. Ct. App. 1986) (citations omitted)(emphasis added):

> As a general rule when an *insured*, without the insurer's knowledge or consent, settles with and fully releases the tortfeasor so as to foreclose the insurer's right of subrogation, the insured violates his agreement with the insurer thereby precluding his right of recovery under the policy. However, this rule has no application where the third party tortfeasor is aware of the interest of the insurer and consents to a settlement *with the insured* for that amount over and above the amount which the insurer has paid or become obligated to pay. In such a case, the third party tortfeasor is held to have consented to the splitting of the cause of action against him and the potential of an unjust double recovery by the insured does not exist. On the other hand, it would be patently unjust to permit a third party tortfeasor, with knowledge of an insurer's subrogation interest, to settle *with the insured* for less than the wrongdoer's full liability, and become thereby insulated against the insurer's right of action against the tortfeasor.

potential claim against Fortress's insurance (NASIC's bond) does not make her an insured (and NASIC has made it clear that its bond does not cover Howard's conduct). None of the cases cited by NASIC (or Howard) deals with this situation,[15] and the Court finds no basis to extend the rule beyond its current parameters.

Stating the situation in generic terms illustrates the absurdity of NASIC's position: An injured party brings a tort action against two individuals - one insured, one uninsured. Before going to trial and before any claim has been made on the insured party's insurer, the injured party settles with the uninsured tortfeasor. According to NASIC, the insurer has to consent to that settlement if the settling (uninsured) tortfeasor knew that the other tortfeasor's insurer had a *potential* right of subrogation and a *potential* claim for contribution against the settling tortfeasor. Failure to obtain such consent, NASIC argues, denies the settling tortfeasor of the protection of Mo. Rev. Stat. § 537.060. Neither case law, logic, public policy, nor common sense warrants such an absurd rule.

## CONCLUSION

For the reasons stated above, the Court finds that under Mo. Rev. Stat. § 537.060, Howard's March 20, 2008, settlement with Plaintiff Cynthia McClelland bars, as a matter of law, the claims for contribution and noncontractual indemnity brought against Howard by the Third-party Plaintiff, NASIC. Therefore, the Court will grant Howard's motion for summary judgment and dismiss him from the lawsuit.

A separate order will be entered contemporaneously with this memorandum opinion.
**ENTERED** this 16th day of August, 2010.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Ryan DeBoef
Erin C. Luke

---

[15] *See General Exchange Insurance Corp. v. Young*, 212 S.W.2d 396 (Mo. 1948); *Dickhans v. Missouri Property Insurance Placement Facility*, 705 S.W.2d at 106; *Travelers Indemnity Co. v. Chumbley*, 394 S.W.2d at 420; and *Farm Bureau Mut. Ins. Co. of Missouri v. Anderson*, 360 S.W.2d 314 (Mo. Ct. App. 1962).